# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 6:14-CR-63 |
| | § | |
| JEREMY CHAD TIDWELL (1) | § | |
| SHANNA PEEK TIDWELL (2) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Shanna Peek Tidwell's motion to release seized funds pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. (Doc. No. 59.) The government filed a response in opposition (Doc. No. 63), to which Ms. Tidwell filed a reply (Doc. No. 64). On April 7, 2015, Ms. Tidwell amended her motion (Doc. No. 68), and on June 5, 2015, Ms. Tidwell amended her motion for a second time (Doc. No. 71). On June 10, 2015, Defendant Jeremy Tidwell filed a motion to incorporate Ms. Tidwell's motion and arguments therein. (Doc. No. 72.) The government filed additional responses in opposition to these amendments and incorporations. (Doc. Nos. 69, 87, 90.) On November 3, 2015, the Court held a hearing on Defendants' Motions. Having considered the parties' arguments, Defendants' Motions (Doc. Nos. 59, 68, 71, and 72) are **DENIED.**

## BACKGROUND

On November 12, 2014, the government indicted Defendants Jeremy Chad Tidwell, Shanna Peek Tidwell, and Brian Tidwell for violations of 21 U.S.C. § 846. An arrest warrant issued, and on December 3, 2014, all three Defendants made their initial appearances. At that time, the government seized numerous assets of the Tidwells and their associated businesses, including 1,100 pounds of synthetic drug inventory, known bank accounts, large quantities of U.S. currency, and other assets deemed to have been proceeds of criminally-derived activity

pursuant to 21 U.S.C. § 853, 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(A) and (C), 18 U.S.C. § 982(a)(1), and 18 U.S.C. § 984. Defendants Shanna and Jeremy Tidwell (hereinafter "Defendants" or "the Tidwells") filed the instant motions seeking the release of certain assets seized by the government. Trial on the indicted offense is presently set for January 6, 2015, before the Honorable Michael H. Schneider.

## DISCUSSION

At the hearing, Defendants specifically requested the release of payroll and sales tax for the month of November 2014, and three days in December 2014. Defendants submitted Exhibit G, a schedule for estimated sales and sales tax liability for that period, and maintained that the Court should direct the release of $51,643.80 to the State of Texas to cover the tax liability for that time frame. Similarly, Defendants maintained that $11,353.11 should be released to satisfy payroll taxes for that time period. Defendants argue that this money never belonged to them and that it was held in trust for the State of Texas and the federal government. In their briefing, Defendants maintained that a number of the bank accounts seized by the government were those used to pay state and federal taxes and sought release pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. (Doc. No. 59, at 1.)

> Rule 41(g) provides that:
>
> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed.R.Crim.P. 41(g).

Here, the Tidwells do not contest the search or seizure was illegal for purposes of these motions, but ask that the funds be released under the equitable jurisdiction of the Court. (Doc. No. 59, at 2.) Defendants provide no direct authority for the release of the funds prior to the criminal disposition of this action. Based on the authority the parties have presented, it appears the issue of whether the Court may release funds seized by the government that were held in trust for the payment of sales and payroll taxes to the state and federal governments is a matter of first impression. Unique to this situation is the fact that Defendants were selling products the government alleges to be illegal in an open and obvious manner out of their stores. As a result, Defendants contend that they were collecting and paying sales tax on the sale of those items.

Defendants cite to Texas Tax Code § 111.016 to support the position that the funds were being held in trust for the benefit of the state. The Texas Tax Code provides in relevant part:

> Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected.

Texas Tax Code § 111.016(a) (Vernon 2001).

Defendants also cite to two cases to support their position that they were de facto trustees. The first case, *In re Amber's Stores, Inc.*, is a bankruptcy case where the court in the Northern District of Texas held that § 111.016(a) creates a trust for the benefit of the Comptroller, and that the store, as the collector of the tax, was a trustee. 205 B.R. 828, 830 (Bankr. N.D. Tex. 1997). The second case, *Serna v. H.E. Butt Grocery Co.*, also notes that a store, in collecting sales tax, acts as an agent of the State of Texas government. 21 S.W.3d 330, 333 (Tex. App. - San Antonio 1999, no pet.) With regard to payroll taxes, Defendants cite to 26 U.S.C. §6672 and *In re Ingram* for the proposition that payroll taxes are also held in trust. Case No. 12-53579, 2014 WL 644501 (Bankr. W.D. Tex. Feb. 19, 2014). In supplemental briefing, the government argues that

the cases cited by Defendants are distinguishable because the cases did not involve criminal proceedings. (Doc. No. 90, at 1.) The Court accepts that under the Texas Tax Code, the Internal Revenue Code, and the supporting case law, the Tidwells, as collectors of sales and payroll taxes, were de facto trustees for the State of Texas and the federal government. However, for the reasons discussed below, the Court finds that the funds in question should not be released.

As noted above, there is no cited authority supporting the release of these funds at this stage of the proceedings. The only analogous situation presented to the Court is a request to release seized funds to hire an attorney. In considering the release of funds based on the Sixth Amendment right to an attorney, courts have held that a defendant must show: (1) there were no assets other than those subject to forfeiture with which to pay defense costs and living expenses; and (2) a bona fide reason to believe that the grand jury erred in finding probable cause to believe the restrained property was subject to forfeiture if the defendant were convicted. *U.S. v. Simpson*, No. 3:09-cr-249, 2011 WL 195676 (N.D. Tex. Jan. 20, 2011). Defendants argue that the right to an attorney is distinguishable from their situation because they are not seeking the release of funds belonging to them personally, but requesting funds held in trust for the government be released back to the government taxing authorities.

While the Court agrees that a request for funds released to pay for an attorney is not directly analogous to the situation at hand, the required showing in those cases is instructive. The funds at issue here were seized by the government pursuant to grand jury indictment as proceeds of criminally-derived activity. In order to release such funds prior to the disposition of

the criminal allegations, the Court is of the opinion that Defendants must, at a minimum, present an evidentiary record supporting the release of the requested funds.[1]

First, because Defendants' primary argument that the funds should be released rests on the fact that the money seized was that held in trust for the government, Defendants must make some showing that the money or accounts seized were actually that which was collected and held in trust for the payment of sales and payroll taxes. Second, Defendants should make a showing that they did not undertake any acts which would have violated their trust obligations—*i.e.* that their actions are consistent with those of a person acting as a trustee for the state or federal government.

Here, Defendants have not made an attempt to show the funds seized were actually held in trust for the government; specifically, Defendants have not shown that the accounts seized contained the funds that would have been used to pay sales and payroll taxes for their stores. Defendants even concede that only "a number of these bank accounts" were those used to pay state and federal taxes. (Doc. No. 59, at 1.) While there is record of Defendants' past payments of sales and payroll taxes, indicating that Defendants had been paying taxes on the sale of goods in their stores, ultimately, Defendants have failed to put forward any evidence to show that money seized by the government was that which was being held in trust. Nor have Defendants provided any evidence of how they handled money generated by their stores. For example, a reasonable showing may have included the earmarking of sales tax at the time of sale coupled with evidence regarding the ordinary business practice of when that money was collected and processed, and ultimately where that money was held until taxes were paid. The record suggests

---

[1] Even if the requisite showing was made, it would not necessarily compel the release of funds. In this case, because the Court's conclusion is that there is an absence of a requisite evidentiary showing by the Defendants, the Court need not determine whether seized funds pursuant to grand jury indictment and an assumed lawful search and seizure can be released prior to the resolution of the criminal proceedings.

that such a pattern and practice perhaps did not exist where Defendants were keeping significant amounts of cash in their bedroom.

The record here is insufficient to determine whether Defendants were acting properly as trustees for the government. Setting aside the fact that the funds at issue were almost entirely generated from sales the government contends were illegal, which may in and of itself be enough to violate the trust,[2] Defendants' business practice with respect to the sale of goods, including the comingling of funds in cash and other assets, suggests that Defendants may have breached the fiduciary duty they owed to the government. *See, e.g., Ruby Robinson Co., Inc. v. Herr*, 453 F.App'x. 463, 465-66 (5th Cir. 2011) (finding shareholders personally liable for breaching their fiduciary duty to preserve trust assets). In this regard, the government's allegations and evidence[3] that Defendants have other means to pay the taxes owed are entirely relevant because, if Defendants violated a duty owed to the government, that money could and should be used to pay the Defendants' tax liability.[4]

In sum, Defendants have provided no evidence that their actions were those of a prudent trustee. Without such a minimal showing, the Court cannot conclude that funds seized pursuant to grand jury indictment as derived from criminal activity should be released for the payment of taxes prior to the resolution of the criminal allegations.

---

[2] Because the Court concludes that the release of funds is improper at this time, the Court need not decide whether sales and payroll taxes derived from the sale of allegedly illegal goods can be held in trust as a matter of law. As the State of Texas has not intervened here, the Court is unaware of its position on this issue. Nor has the federal government taken a clear position on this issue.

[3] The government has put forth evidence of assets not seized that are believed to be owned by the Tidwells, including, a Colorado bank account containing approximately $15,000; a 1972 Cessna airplane; four personal watercraft vehicles; a 1977 boat; a 2010 boat; a 2013 ATV vehicle; four 2013-2014 dirt bikes; a 2012 motorcycle; a Kubota tractor; and various trailers. (Doc. No. 63, at 5-6.). The government also points out that the Tidwells continue to operate one of their stores and that Defendants have had the opportunity to earn money from other sources to pay their taxes since they were placed on pretrial release.

[4] To be clear, the Court is not finding that Defendants have breached a fiduciary duty; rather, the Court simply finds that the record is insufficiently developed to support release of the requested funds.

## **CONCLUSION**

For the reasons discussed herein Defendants' Motions (Doc. Nos. 59, 68, 71, and 72) are **DENIED.**

**So ORDERED and SIGNED this 12th day of November, 2015.**

*/s/ John D. Love*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE